UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

VOX NETWORK SOLUTIONS, INC.,

Plaintiff,

v.

GAGE TECHNOLOGIES, INC., et al.,

Defendants.

Case No.  22-cv-09135-AMO

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**

Re: Dkt. No. 16

This is a case about trade secret misappropriation.  Before the Court is Defendants' motion to dismiss.  The matter is fully briefed and suitable for decision without oral argument.  *See* Civil L.R. 7-6.  Having read the parties' papers and carefully considered their arguments and the relevant legal authority, the Court hereby **GRANTS IN PART AND DENIES IN PART** the motion to dismiss for the following reasons.

I.      **BACKGROUND**[1]

Plaintiff Vox Network Solutions, Inc. ("Vox") and Defendant Gage Technologies, Inc. ("Gage") are companies that provide consulting and network support services.  Compl. ¶¶ 2, 5.  In late 2017, Vox hired Defendant Kristopher McGreevey as a Regional Sales Director for the Pacific Northwest, and Defendant Kevin Frazier as a Senior Account Executive.  Compl. ¶¶ 23-25.  In November of 2019, Gage and Vox became business partners.  Compl. ¶ 6.  Gage worked as a subcontractor for Vox, providing mid-market phone system implementation services.  Compl. ¶ 6.

As conditions of their employment, Frazier and McGreevey (collectively, "Individual

---

[1] The Court accepts Vox's allegations in the complaint as true and construes the pleadings in the light most favorable to the Vox.  *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) (citation omitted).

United States District Court
Northern District of California

Defendants") signed Employee Confidentiality Agreements which obligated them to keep certain information confidential and not to share confidential information with any competitor. Compl. ¶ 26.  The agreements also have a provision preventing the Individual Defendants from soliciting or hiring Vox employees or contractors during employment or for a year after terminating employment.  Compl. ¶ 27.

Prior to joining Vox, the Individual Defendants developed a relationship with a cell phone company, Consumer Cellular, Inc. ("Consumer Cellular") and a software vendor, Avaya, Inc. ("Avaya").  Compl. ¶ 36.  Most of Avaya's products are sold through business partners, whose employees must obtain certifications to sell, install, and provide support for Avaya's products. Compl. ¶ 37.  Consumer Cellular became an important client for Vox and purchased Avaya products and support through Vox.  Compl. ¶ 36.

In August and September of 2021, Frazier scheduled and attended a Vox-funded fishing and golfing trip with Consumer Cellular, where he "proposition[ed]" Consumer Cellular to transfer to Gage.  Compl. ¶ 39.  In October of the same year, McGreevey and Frazier "engaged Avaya for a quote regarding the cost of transitioning Consumer Cellular to a subscription-based licensing agreement[.] . . ."  Compl. ¶ 40.  The Individual Defendants did not follow Vox-mandated procedures as they failed to open an engineering ticket or enter the sales opportunity on Vox's software system.  Compl. ¶ 40.

Around the same time, McGreevey moved to Texas, where Gage is headquartered. Compl. ¶ 41.  Consumer Cellular and Frazier emailed about transitioning Consumer Cellular to a subscription-based Avaya license and about obtaining a temporary product license while Frazier worked out a quote, which he did not record in violation of Vox's procedure.  Compl. ¶¶ 42-45.  In October of 2021, McGreevey and Frazier resigned from Vox and joined Gage.  Compl. ¶¶ 24-25. McGreevey is currently Gage's President and CEO and Frazier is Gage's Executive Vice President and CRO.  Compl. ¶¶ 24-25.  McGreevey left Vox on the same day Avaya approved the temporary license for Consumer Cellular, and Frazier resigned thirty-three minutes before delivering the temporary licenses to Consumer Cellular.  Compl. ¶¶ 47, 49.  In a November 2021 email exchange with Vox, Consumer Cellular confirmed that it was migrating its account to Gage

1   under the subscription-based license Frazier had generated.  Compl. ¶ 53.

2   Two days after Frazier resigned, Vox learned for the first time that Consumer Cellular

3   intended to migrate to a subscription-based model with Avaya.  Compl. ¶ 50.  Vox conducted a

4   forensic review of Frazier's Vox-registered email and discovered that Frazier had deleted many

5   communications regarding Consumer Cellular's planned migration to a subscription-based model.

6   Compl. ¶ 51.  In late November of 2021, Vox reassigned the Consumer Cellular account to

7   another Vox employee, Kevin Bryant.  Compl. ¶ 53.  In emails between Bryant and Consumer

8   Cellular, Consumer Cellular confirmed that it was migrating its account to Gage under the

9   subscription-based quote Frazier had generated.  Compl. ¶ 53.  In December of 2021, Bryant

10  delivered Consumer Cellular a quote from Vox to convert Consumer Cellular to a subscription-

11  based model and offered a $268,000 discount if it chose to continue with Vox.  Compl. ¶ 54.

12  Consumer Cellular informed Vox that it planned to move its account to Gage beginning in January

13  2022.  Compl. ¶ 55.

14  On December 28, 2022, Vox filed a complaint for damages against Gage, McGreevey, and

15  Frazier for (1) violation of the California Uniform Trade Secrets Act ("CUTSA"), Cal. Civ. Code

16  § 3426 *et seq.*; (2) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. and Prof.

17  Code § 17200; (3) breach of fiduciary duty (4) breach of duty of loyalty; (5) fraudulent

18  concealment; (6) aiding and abetting breach of fiduciary duty; (7) civil conspiracy; (8) tortious

19  interference with contract, and (9) tortious interference with prospective economic advantage.  On

20  February 28, 2023, Defendants filed a motion to dismiss all of Vox's claims for failure to state a

21  claim.  Motion (ECF 16).  Defendants allege that Vox failed to adequately plead trade secret

22  misappropriation under CUTSA, that the CUTSA claim preempts the remaining causes of action,

23  and alternatively that the remaining causes of action fail for failure to state a claim.

24  **II.    LEGAL STANDARD**

25  Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint may be

26  dismissed for failure to state a claim for which relief may be granted.  Fed. R. Civ. P. 12(b)(6).

27  Rule 12(b)(6) requires dismissal when a complaint lacks either a "cognizable legal theory" or

28  "sufficient facts alleged" under such a theory.  *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201,

United States District Court
Northern District of California

1208 (9th Cir. 2019) (citation omitted).  Whether a complaint contains sufficient factual

allegations depends on whether it pleads enough facts to "state a claim to relief that is plausible on

its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Id.* at 678.

When evaluating a motion to dismiss, the court "accept[s] factual allegations in the

complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving

party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

However, "allegations in a complaint . . . may not simply recite the elements of a cause of action

[and] must contain sufficient allegations of underlying facts to give fair notice and to enable the

opposing party to defend itself effectively." *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir.

2014) (citations omitted).  The Court may dismiss a claim "where there is either a lack of a

cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal claim."

*Hinds Invs., L.P. v. Angioli*, 654 F.3d 846, 850 (9th Cir. 2011).

## III.    ANALYSIS

Defendants contend that Vox fails to adequately plead the trade secret misappropriation

claim, that the trade secret claim supersedes the remaining causes of action, and alternatively that

the remaining causes of action fail to state a claim.  The Court first addresses the trade secret

misappropriation claim before considering supersession and the remaining causes of action.

### A.      Trade Secret Misappropriation (Count 1)

"A cause of action for misappropriation of trade secrets requires a plaintiff to show the

plaintiff owned the trade secret; at the time of misappropriation, the information was a trade

secret; the defendant improperly acquired, used, or disclosed the trade secret; the plaintiff was

harmed; and the defendant's acquisition, use, or disclosure of the trade secret was a substantial

factor in causing the plaintiff harm." *AMN Healthcare, Inc. v. Aya Healthcare Servs., Inc.*, 28 Cal.

App. 5th 923, 942 (2018); *see Alta Devices, Inc. v. LG Elecs., Inc.*, 343 F. Supp. 3d 868, 877

(N.D. Cal. 2018) ("[t]o state a claim for trade secret misappropriation under the DTSA and the

United States District Court
Northern District of California

CUTSA, a plaintiff must allege that: '(1) the plaintiff owned a trade secret; (2) the defendant misappropriated the trade secret; and (3) the defendant's actions damaged the plaintiff.'") (citation omitted).

The California Uniform Trade Secrets Act ("CUTSA") defines a trade secret as information that (1) derives its economic value from not being generally known, and (2) is subject to reasonable measures of secrecy by its owner.  *See* Cal. Civ. Code § 3426.1(d).  "'Information' has a broad meaning under the [CUTSA]."  *Altavion, Inc. v. Konica Minolta Sys. Lab., Inc.*, 226 Cal. App. 4th 26, 53 (2014) (citation omitted).  "A plaintiff seeking relief for misappropriation of trade secrets must identify the trade secrets and carry the burden of showing that they exist," and "describe the subject matter of the trade secret with *sufficient particularity* to separate it from matters of general knowledge in the trade or of special knowledge of those persons . . . skilled in the trade."  *Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1164-65 (9th Cir. 1998) (quotations and citations omitted) (emphasis in original).

Vox alleges that it owns the following trade secrets:

> [S]olutions for complex customer requirements; confidential client lists which contain the identity of, and key contact information for, Vox's clients and prospective clients; customer requirements; Vox's proprietary strategy for each client; detailed fee structures; Vox's proprietary database of customers, business partners, and contacts; Vox's valuable and confidential pricing, marketing, and business strategies cultivated from investments in research and development; special practices, methods, and collateral built over years of experience; and other proprietary information regarding services performed for actual and prospective clients.

Compl. ¶ 58.  The parties dispute whether Vox identifies the trade secrets at issue with sufficient specificity.

Other courts have found that such broad descriptions fail to show that each category constitutes a trade secret.  *See, e.g.*, *Vendavo, Inc. v. Price f(x) AG*, No. 17-cv-06930-RS, 2018 WL 1456697, at *3-4 (N.D. Cal. Mar. 23, 2018) (finding insufficient specificity where plaintiff described "broad, categorical terms, more descriptive of the types of information that generally may qualify as protectable trade secrets" rather than a particular trade secret it had a basis to believe was misappropriated); *Albert's Organics, Inc. v. Holzman*, 445 F. Supp. 3d 463, 472 (N.D.

United States District Court
Northern District of California

1    Cal. 2020) (concluding "supplier information, pricing, financing, personnel files and records,

2    proposed and contemplated investments, financial records, and other internally generated studies

3    and reports" "lack[ed] particularity to put defendants on notice").  This Court is similarly

4    unconvinced that Vox's broad categories of purported trade secrets suffice to identify a trade

5    secret.

6            Even assuming some of these categories qualified as trade secrets, Vox has not alleged

7    facts showing that Defendants "improperly acquired, used, or disclosed [a] trade secret."  *See*

8    *AMN Healthcare, Inc.*, 28 Cal. App. 5th at 942.  Vox alleges that "Defendants misappropriated

9    VOX's confidential, proprietary, and trade secret information . . . [and that] MCGREEVEY and

10   FRAZIER disclosed the trade secrets to GAGE, who acquired the trade secrets, knowing that

11   MCGREEVEY and FRAZIER had acquired them by improper means."  Compl. ¶ 63.  However,

12   Vox does not allege which purported trade secrets were misappropriated or provide any factual

13   allegations to support these conclusory assertions.  Vox suggests that the allegations here are

14   comparable to those in *Arthur J. Gallagher & Co. v. Tarantino*, 498 F. Supp. 3d 1155 (N.D. Cal.

15   2020) ("*Arthur J.*").  In *Arthur J.*, the plaintiff identified nine documents with trade secrets that

16   defendants emailed to their personal email accounts in the months before resigning and used that

17   information to "woo" clients from the plaintiff to a different company.  *Id.* at 1172.  The court

18   found that the information in the emails "related to clients who did actually leave [plaintiff

19   company] shortly thereafter" and the suspicious timing supported a claim for misappropriation.

20   *Id.*

21           Distinctly, the Complaint here alleges that Individual Defendants emailed Consumer

22   Cellular about the Avaya subscription in the months before leaving, and Consumer Cellular

23   ultimately left Vox for Gage.  Vox does not allege, however, what information the Individual

24   Defendants allegedly shared with Gage, or even point to any allegations that the Individual

25   Defendants accessed or downloaded any documents containing trade secrets.  Indeed, nowhere in

26   the Complaint does Vox allege which, if any, trade secrets the defendants supposedly

27   misappropriated or disclosed from the broad category of trade secrets defined by Vox.  Further,

28   Vox makes no allegations with respect to the cause of action against Gage, except for the

                                                          6

1    conclusory assertion that Gage "conspired with McGreevey and Frazier to improperly acquire

2    Vox's trade secrets."  Compl. ¶ 63.  That is not enough.  *See, e.g.*, *Arthur J.*, 498 F. Supp. 3d at

3    1173 (finding that even if the defendant company may have benefited from the individual

4    defendants' acquisition and use of trade secrets, there were no allegations supporting the theory

5    that it directed them to acquire such information).

6        The conclusory assertions here do not satisfy the pleading requirements in *Twombly* and

7    *Iqbal*.  *See, e.g.*, *Veronica Foods Co. v. Ecklin*, No. 16-CV-07223-JCS, 2017 WL 2806706, at *14

8    (N.D. Cal. June 29, 2017) (dismissing "everything-but-the-kitchen-sink assertion that Defendants

9    'have made improper and unauthorized use of Veronica Foods's Customer List, Supplier List, and

10   Confidential Business Information' to solicit customers" as "naked assertions").  Accordingly, the

11   Court **DISMISSES** Vox's trade secret misappropriation claim with leave to amend.

12       **B.     CUTSA Preemption or "Supersession"**

13       The California Uniform Trade Secrets Act ("CUTSA") was intended "to occupy the field

14   of trade secret liability to the exclusion of other civil remedies."  *Five Star Gourmet Foods, Inc. v.*

15   *Fresh Express, Inc.*, No. 19-CV-05611-PJH, 2020 WL 513287, at *14 (N.D. Cal. Jan. 31, 2020)

16   (citing *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 234 (2010)).  CUTSA therefore

17   "preempts common law claims that are 'based on the same nucleus of facts as the

18   misappropriation of trade secrets claim for relief.'"  *K.C. Multimedia, Inc. v. Bank of Am. Tech. &*

19   *Operations, Inc.*, 171 Cal. App. 4th 939, 958 (2009) (citation omitted).  "Common law claims

20   premised on the wrongful taking of information which does not qualify as a trade secret are also

21   superseded, unless the plaintiff identifies some law which confers the plaintiff with property rights

22   in the information."  *Bus. Sols., LLC v. Ganatra*, No. SACV181426DOCKESX, 2019 WL

23   926351, at *6 (C.D. Cal. Jan. 7, 2019) (citing *Silvaco*, 184 Cal. App. 4th at 236-40); *see also*

24   *Angelica Textile Servs., Inc. v. Park*, 220 Cal. App. 4th 495, 506 (2013) ("In general, the

25   acquisition, disclosure or transfer of information that does not fit UTSA's definition of a trade

26   secret does not give rise to any liability, even when that liability is couched in terms of a separate

27   tort or statutory violation.").

28       CUTSA supersedes other claims even when they seek "something more" or "require[]

proof of additional elements not necessary to a trade-secret misappropriation claim." *EchoSpan,*
*Inc. v. Medallia, Inc.*, No. 22-CV-1732-NC, 2022 WL 18539352, at *2 (N.D. Cal. July 19, 2022)
(citing *K.C. Multimedia, Inc.*, 171 Cal. App. 4th at 958). "If there is no material distinction
between the wrongdoing alleged in a [C]UTSA claim and that alleged in a different claim, the
[C]UTSA claim preempts the other claim." *Arthur J.*, 498 F.Supp.3d at 1174 (citation omitted).
The "determination of whether a claim is based on trade secret misappropriation is largely
factual." *K.C. Multimedia*, 171 Cal. App. 4th at 954.  In *K.C. Multimedia, Inc.*, the California
Court of Appeal held that unfair competition law and tortious interference claims were superseded
where "the gravamen of the wrongful conduct asserted here is the misappropriation of trade
secrets." *Id.* at 960-62.

Consistent with the recent decisions of courts in the district, the Court may decide the issue
of supersession at the pleading stage.  *See EchoSpan*, 2022 WL 18539352, at *2; *Acorn Bay v.*
*CamelBack Products, LLC*, No. 20-cv-05214-WHA, 2020 WL 7664450, at *2 (N.D. Cal., Dec.
24, 2020); *Five Star Gourmet Foods*, 2020 WL 513287, at *14.  "At the pleadings stage, the
supersession analysis asks whether, stripped of facts supporting trade secret misappropriation, the
remaining factual allegations can be reassembled to independently support other causes of action."
*Waymo LLC v. Uber Techs., Inc.*, 256 F. Supp. 3d 1059, 1062 (N.D. Cal. 2017).  Put another way,
"[t]o survive preemption, [a plaintiff's] claims must 'allege wrongdoing that is materially distinct
from the wrongdoing alleged in a CUTSA claim.'"  *Prostar Wireless Grp., LLC v. Domino's*
*Pizza, Inc.*, 360 F. Supp. 3d 994, 1006 (N.D. Cal. 2018) (citation omitted).

Defendants argue that CUTSA preempts the remaining claims (Counts 2-9).  The Court
agrees that several of Vox's claims are predicated in part on trade secret misappropriation, as
shown through the following excerpts from the pleading:

> UCL claim allegations that Defendants engaged in unlawful, unfair, and fraudulent
> business acts which "include, but are not limited to, misappropriating Vox's
> confidential and proprietary information," Compl. ¶ 68;
>
> Breach of fiduciary duty and loyalty allegations that McGreevey and Frazier used
> "Vox-registered email accounts to covertly transmit Vox's confidential information
> to Gage" and "conspir[ed] with Gage, while they were all still employed by Vox, to
> steal Vox's Confidential Information," Compl. ¶¶ 75, 80;

United States District Court
Northern District of California

8

Fraudulent concealment claim allegation that Defendants intended to deceive Vox when using "Confidential Information to cultivate and preserve Vox's existing relationship with its client, Consumer," Compl. ¶ 86;

Aiding and abetting breach of fiduciary claim allegation that that Gage "knew that McGreevey and Frazier intended to . . . steal[] Vox's Confidential Information in order to poach Vox's client, Consumer," Compl. ¶ 92;

Civil conspiracy claim allegation that Defendants conspired to steal Vox's Confidential Information, Compl. ¶ 98;

Tortious interference claim allegation that Gage "exploited its intimate knowledge of Vox's trade secrets and clients to infiltrate and disrupt Vox's client base by . . . hiring Vox employees . . ." Compl. ¶ 38(c).

To the extent those causes of action rely on allegations of trade secret misappropriation, they must be dismissed.

Certain of Vox's claims, however, are also based on conduct that does not implicate trade secret misappropriation. For example, in the breach of fiduciary duty and loyalty claims, Vox alleges that Defendants used Vox resources, such as the company-funded fishing trip and Vox-registered email accounts to secretly "solicit, develop, and coordinate Consumer's transition to a subscription-based Avaya licensing agreement" to poach Consumer Cellular for Gage and wrongfully competed with Vox by facilitating the hiring of Vox employees at Gage and Avaya. Compl. ¶¶ 75, 80, 105. As this misconduct stands independent of any trade secrets, there is no basis for CUTSA preemption. *See, e.g.*, *Arthur J.*, 409 F. Supp. 3d at 1175 (no CUTSA preemption of claims based on conduct unrelated to trade secret misappropriation); *Henry Schein, Inc. v. Cook*, No. 16-CV-03166-JST, 2017 WL 783617, at *3 (N.D. Cal. Mar. 1, 2017) (no preemption where plaintiff "did not necessarily rely on HSI's trade secrets when she solicited customers to move their business to [another company]").

Because not all the claims are fully superseded by CUTSA, the Court next analyzes the sufficiency of the Complaint; specifically, whether Vox states a claim based on the allegations not superseded.

### C.    Unfair Competition Law (Count 2)

California's Unfair Competition Law ("UCL") "provides a cause of action for business

practices that are (1) unlawful, (2) unfair, or (3) fraudulent." *Backhaut v. Apple, Inc.*, 74 F. Supp. 3d 1033, 1050 (N.D. Cal. 2014) (citing Cal. Bus. & Prof. Code § 17200); *see Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 320 (2011). "The UCL's coverage is 'sweeping,' and its standard for wrongful business conduct 'intentionally broad.' " *Moore v. Apple, Inc.*, 73 F. Supp. 3d 1191, 1204 (N.D. Cal. 2014) (quoting *In re First All. Mortg. Co.*, 471 F.3d 977, 995 (9th Cir. 2006)).

Defendants argue that the UCL claim fails because Vox has not adequately pleaded any other violation of law. Motion at 16-17 n.1. Defendants thus appear to only challenge the UCL claim under the "unlawful" prong. Under the unlawful prong, the claim is based entirely on the misappropriation of confidential information. Compl. ¶¶ 68-69. The UCL " 'borrows' violations of other laws and treats these violations . . . as unlawful practices independently actionable . . . [.]" *Farmers Ins. Exch. v. Superior Ct.*, 2 Cal. 4th 377, 383 (1992) (citation omitted). "Where a plaintiff cannot state a claim under the 'borrowed' law, he or she cannot state a UCL claim either." *Sevier v. Real Time Resols., Inc.*, No. 22-CV-06693-JSW, 2024 WL 68555, at *6 (N.D. Cal. Jan. 5, 2024) (citation omitted). As Vox fails to state a CUTSA claim, the UCL claim, as premised on the unlawful prong, fails.

However, Vox also brings claims under the fraudulent and unfair prongs of the UCL. Under the fraudulent prong, Vox alleges that Defendants fraudulently developed a subscription plan for Consumer Cellular and used Vox's resources (e.g., the fishing trip) to convince Consumer Cellular to move to Gage. *Id.* ¶ 70. Vox also alleges that Defendants' business acts and practices were unfair. *Id.* ¶ 71. Because neither party addresses the fraudulent or unfair prongs in the briefing, the Court does not analyze them beyond finding that Defendants have not challenged them, and thus these theories of liability remain. Thus, the Court **GRANTS IN PART** Defendants' motion to dismiss as Vox has not stated a CUTSA claim under the unlawful prong and **DENIES IN PART** Defendants' motion to dismiss the UCL claim because Vox's allegations under the fraudulent and unfair prongs remain.

### D.    Breach of Fiduciary Duty and Aiding and Abetting a Breach (Counts 3 and 6)

A breach of fiduciary duty requires showing "(1) the existence of a fiduciary duty; (2) the breach of that duty; and (3) damage proximately caused by that breach." *IIG Wireless, Inc. v. Yi*,

22 Cal. App. 5th 630, 646 (2018) (quoting *Mosier v. Southern Cal. Physicians Ins. Exchange*, 63 Cal. App. 4th 1022, 1044 (1998)).  "California courts have defined the elements of [breach of loyalty and aiding and abetting] claims as analogous to a claim for breach of fiduciary duty."  *In re Brocade Commc'ns Sys., Inc. Derivative Litig.*, 615 F. Supp. 2d 1018, 1037 (N.D. Cal. 2009) (citing *Huong Que, Inc. v. Luu*, 150 Cal. App. 4th 400, 410 (2007)).  The Court addresses these elements in turn.

### 1.     Existence of Fiduciary Duty

Under California law, not every employee owes a fiduciary duty to their employer, but corporate directors and officers typically owe fiduciary duties to a corporation.  *GAB Bus. Servs., Inc. v. Lindsey & Newsom Claim Servs., Inc.*, 83 Cal. App. 4th 409, 417-20 (2000) ("*GAB*"), *overruled on other grounds by Reeves v. Hanlon*, 33 Cal. 4th 1140 (2004).  "[A]n officer who participates in management of the corporation, exercising some discretionary authority, is a fiduciary of the corporation as a matter of law.  Conversely, a 'nominal' officer with no management authority is not a fiduciary.  Whether a particular officer participates in management is a question of fact."  *Id.* at 420-21.  "California law does not clearly state whether all employees (including lower-level employees) owe a fiduciary duty to their employer."  *Albert's Organics*, 445 F. Supp. 3d at 479 n.2.

Vox alleges that McGreevey and Frazier owed a fiduciary duty to Vox due to their positions as Regional Sales Director and Senior Account Executive, respectively.  Compl. ¶¶ 24-25, 74.  Vox's sole allegation about Frazier is that his "assigned duties included generating new sales and maintaining Vox's current customer base."  Compl. ¶ 25.  Vox has not alleged that Frazier participated in management and "exercis[ed] discretionary authority."  *See GAB*, 83 Cal. App. 4th at 420.  Thus, Vox has failed to allege that Frazier owed it a fiduciary duty.

However, McGreevey, as Regional Sales Director, was responsible for building a team of "Account Executives" and managing sales representatives in California and the Pacific Northwest sales region.  Compl. ¶ 24.  McGreevey's position as Regional Sales Director creates a reasonable inference that he owes a fiduciary duty to Vox.  *See, e.g.*, *Nat'l Union Fire Ins. Co. of Pittsburgh PA, v. Shores*, No. 119CV01113NONESAB, 2020 WL 2937801, at *6 (E.D. Cal. June 3, 2020),

*report and recommendation adopted*, No., 2020 WL 4227479 (E.D. Cal. July 23, 2020) (finding that defendants' position as district manager with control over a district's finances and financial reporting "creates a reasonable inference that she owed a fiduciary duty"). Thus, the analysis continues as to McGreevey.

### 2. Breach

The fiduciary duty or duty of loyalty is breached "when the employee takes action which is inimical to the best interests of the employer." *Stokes v. Dole Nut Co.*, 41 Cal. App. 4th 285, 295 (1995). Here, Vox alleges that the Individual Defendants breached their fiduciary duties in two ways. First, Vox alleges that Defendants covertly transmitted confidential information to Gage. Compl. ¶ 75. As discussed above, CUTSA supersedes the allegations about transmitting confidential information. *See Five Star Gourmet Foods*, 2020 WL 513287, at *14 ("a claim alleging a violation of a duty of loyalty is not displaced by CUTSA where the duty of loyalty would be violated by undertaking competitive acts, regardless of whether any proprietary information was implicated. . . . However, 'where the allegation is that [a defendant] breached his duty of loyalty by disclosing trade secrets, the claim for breach of fiduciary duty is based on the same operative facts and is therefore preempted by CUTSA.' ") (citation omitted). Thus, to the extent Vox's allegations are based on the transmission of confidential information, CUTSA supersedes the claim.

Second, Vox alleges that McGreevey breached his duty by soliciting and coordinating Consumer Cellular's transition to a subscription-based Avaya licensing agreement for Gage's benefit. Compl. ¶ 75. Defendants argue that Vox's allegations regarding the Consumer Cellular deal are conclusory and only show that they were making "basic preparations to leave Vox." Motion at 18. Generally, employees may prepare to compete before resigning, but they "may not solicit customers or do other acts in direct competition to the current business prior to leaving that business." *Albert's Organics, Inc*, 445 F. Supp. 3d at 480 (citing *Bancroft-Whitney v. Glen*, 64 Cal. 2d 327, 345-346 (1966)). Vox alleges that the Individual Defendants prepared a quote for a subscription-based Avaya plan for Consumer Cellular with the intent to transfer Consumer Cellular to Gage, and intentionally flouted internal Vox procedures to conceal this opportunity,

including failing to open an engineering ticket, notify Vox about migrating Consumer Cellular to Avaya, or record the sale opportunity or quote.  Compl. ¶¶ 40-45.  In addition, McGreevey terminated his employment with Vox and joined Gage on the same day Avaya approved the temporary product licenses for Consumer.  Compl. ¶¶ 47-48.  Accepting these allegations as true, McGreevey went beyond mere "preparation to leave," and instead took actions to assist Consumer Cellular in leaving Vox and becoming a client of Gage.[2]  In sum, Vox has sufficiently alleged that McGreevey breached his fiduciary duty to Vox.  *See Albert's Organics, Inc*, 445 F. Supp. 3d at 480.

Accordingly, the Court **DENIES** the motion to dismiss the breach of fiduciary duty claim as to McGreevey and **GRANTS** the motion to dismiss with leave to amend as to Frazier.

### 3.    Aiding and Abetting Breach of Fiduciary Duty

Vox also brings the sixth cause of action against Gage for aiding and abetting the breach of a fiduciary duty.  Defendants argue that Vox's allegations in support of this claim are "entirely conclusory."  Motion at 18.  The Court agrees.  The extent of Vox's allegations against Gage are that it knew about McGreevey and Frazier's actions and "encouraged, facilitated, and coordinated Consumer Cellular's migration from Vox to Gage . . . and compensated [McGreevey and Frazier] with leadership roles and lucrative salaries."  Compl. ¶¶ 93-94.  Vox has failed to provide any factual allegations as to Gage's actions beyond hiring the Individual Defendants.  These conclusory allegations cannot survive a motion to dismiss.  The Court therefore **DISMISSES** the aiding and abetting claim with leave to amend.

### E.    Duty of Loyalty (Count 4)

Breach of the duty of loyalty similarly requires duty, breach, and damages.  *See Huong Que, Inc. v. Luu*, 150 Cal. App. 4th 400, 410 (2007).  Defendants argue that the Complaint does not allege that Frazier or McGreevey owed any loyalty duties to Vox, and that there are only conclusory allegations of breach.  Motion at 17-18.

---

[2] As Defendants do not challenge whether any alleged breach caused damage to Vox, the Court does not address this element.

United States District Court
Northern District of California

United States District Court
Northern District of California

In addition to the allegations in the breach of fiduciary duty section above, Vox alleges that the Individual Defendants violated their Confidentiality Agreement by helping two Vox employees get hired at Consumer Cellular and Avaya and developing a deal with Consumer Cellular that Defendants intended to develop for Gage.  The Confidentiality Agreement states that Vox employees may not:

> [D]irectly or indirectly (a) hire or recruit any employee or contractor of Company, or solicit or in any manner encourage employees or consultants of Company to end their relationships with Company; or (b) other than on behalf of Company, call on, solicit or take away the business of, or attempt to do any of the same, any customer of Company with whom Employee became acquainted during the course of Employee's employment with Company through use of Confidential Information.

Compl. ¶ 38(d).

Vox alleges that a Vox employee, Eric Runnels, sent his resume to Frazier, who offered to help Runnels apply for a job at Avaya through his contacts.  Compl. ¶ 38(a).  Vox also points to a fishing and golf trip Frazier took with a Consumer Cellular representative in August of 2021 and the suspect timing of the Individual Defendants departure from Vox – McGreevey left Vox on the same day Avaya approved the temporary license for Consumer Cellular, and Frazier resigned thirty-three minutes before delivering the temporary licenses to Consumer Cellular.  Compl. ¶¶ 39, 47, 49.  Frazier scrubbed his emails related to the development of the Consumer subscription plan quote.  Compl. ¶ 51.  Consumer Cellular became a client of Gage shortly after the Individual Defendants joined Gage.  Compl. ¶¶ 53, 55.  Given that the actions Defendants took to transfer Consumer Cellular to Gage while still employed at Vox and to help a Vox employee get a job at Avaya in violation of the Confidentiality Agreement were "inimical to the best interests of the employer," *Stokes*, 41 Cal. App. 4th at 295, the Court **DENIES** the motion to dismiss the breach of loyalty claim.

### F.     Fraudulent Concealment (Count 5)

"[T]he elements of a cause of action for fraud based on concealment are: '(1) the defendant must have concealed or suppressed a material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been

14

1    unaware of the fact and would not have acted as he did if he had known of the concealed or

2    suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must

3    have sustained damage.'"  *Jones v. ConocoPhillips Co.*, 198 Cal. App. 4th 1187, 1198 (2011)

4    (citation omitted).

5            Vox alleges that the Individual Defendants intentionally concealed the scheme to migrate

6    Consumer Cellular to a subscription-based Avaya licensing agreement using Gage as the deal

7    broker.  Compl. ¶ 85.  The material fact at issue was the sales opportunity with Consumer Cellular.

8    Under the terms of their employment and their positions within the firm, the Individual

9    Defendants were obligated to disclose the sales opportunity.  Specifically, Vox alleges that the

10   Individual Defendants (1) failed to open an engineering ticket and enter this sales opportunity in

11   the Vox's software; (2) intentionally deleted all communications and data related to the plan; and

12   (3) refused to surrender Vox-owned devices to conceal their conduct.  Compl. ¶ 85.  Vox also

13   argues that McGreevey moved to Texas, where Gage is located, without notifying Vox.

14   Compl. ¶ 85.  Defendants contend that Vox failed to sufficiently plead the concealment of a

15   material fact and that Vox would have acted differently.  Motion at 19.

16           Vox does not allege that McGreevey was under any duty to disclose that he moved to

17   Texas.  However, Vox does allege that the Individual Defendants were required to disclose the

18   sales opportunity and quote that they prepared for Consumer Cellular, which they failed to do on

19   multiple occasions.  *See* Compl. ¶¶ 40, 44, 45.  Thus, Vox sufficiently alleges that Defendants

20   concealed a material fact – the existence of the sales opportunity with Consumer Cellular.

21           However, Vox does not allege how it would have acted differently if it had known of the

22   opportunity.  Vox learned about the plan to migrate Consumer Cellular to a subscription-based

23   model with Avaya on October 27, 2021, twelve days after McGreevey terminated his employment

24   with Vox.  Compl. ¶¶ 47, 50.  Vox states only that it would have "pursued all reasonable remedies

25   available" had it learned of the concealment.  Compl. ¶ 88.  Vox does not explain what conduct it

26   would have taken, i.e., that it "would not have acted as [it] did if [it] had known of the concealed

27   or suppressed fact."  *See Jones*, 198 Cal. App. 4th at 1198.  Accordingly, the Court **DISMISSES**

28   the fraudulent concealment claim with leave to amend.

United States District Court
Northern District of California

### G.   Civil Conspiracy (Count 7)

In California, there is no distinct tort for civil conspiracy.  *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 510-11 (1994).  Instead, conspiracy imposes liability on someone who "although not actually committing a tort themselves, share[s] with the immediate tortfeasors a common play or design in its perpetration." *Id.*  "Liability for civil conspiracy generally requires three elements: (1) formation of the conspiracy (an agreement to commit wrongful acts); (2) operation of the conspiracy (commission of the wrongful acts); and (3) damage resulting from operation of the conspiracy." *People ex rel. Kennedy v. Beaumont Inv., Ltd.*, 111 Cal. App. 4th 102, 137 (2003), *as modified on denial of reh'g* (Sept. 9, 2003).

Vox alleges that Defendants conspired to steal Vox's confidential information, misappropriate financial resources, and tortiously interfere with contractual relationships and prospective economic advantage.  Compl. ¶ 98.  However, Vox has not alleged the formation of an agreement to commit wrongful acts.  Thus, it has failed to plead one of the three necessary elements and the Court **DISMISSES** this claim with leave to amend.

### H.   Tortious Interference with Contract and Prospective Economic Advantage (Counts 8 and 9)

To plead tortious interference with contractual relations, a plaintiff must show "(1) the existence of a valid contract between plaintiff and a third party; (2) defendant's knowledge of that contract; (3) the defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Ixchel Pharma, LLC v. Biogen, Inc.*, 9 Cal. 5th 1130, 1141 (2020) (citation omitted); *see Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990).

The elements of an intentional interference with prospective economic advantage are similar, but do not require a legally binding contract, *Ixchel*, 9 Cal. 5th at 1141, and require "intentionally wrongful acts designed to disrupt the [economic] relationship." *Roy Allan Slurry Seal, Inc. v. American Asphalt South, Inc.*, 2 Cal. 5th 505, 512 (2017) (citation omitted).  The predicate "independently wrongful act" must be "unlawful," that is, "proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." *Korea*

1   *Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1159 (2003).

2          Where a contract is based on an at-will employee relationship, a plaintiff must also allege

3   an independently wrongful act "under the same California standard applicable to claims for

4   intentional interference with prospective economic advantage." *Reeves v. Hanlon*, 33 Cal. 4th

5   1140, 1152 (2004); *see Ixchel Pharma, LLC v. Biogen, Inc.*, 930 F.3d 1031, 1037 (9th Cir. 2019).

6          Vox alleges that Defendants tortiously interfered with the Consumer Cellular contract as

7   well as the at-will employee contracts.  Vox further alleges that Defendants tortiously interfered

8   with the prospective economic advantage in the Consumer Cellular contract by misappropriating

9   Vox's confidential information, using the confidential information on behalf of Gage, engaging in

10  "concealed and offline dealings," and deleting evidence of their misconduct.  Compl. ¶¶ 105, 110-

11  11.  Defendants argue that Vox has not alleged an independently wrongful act and has not

12  indicated that there was an existing contract with respect to Consumer Cellular.  Motion at 21.

13         To the extent Vox's allegations are based on the misappropriation of trade secrets, CUTSA

14  supersedes the claims.  *See, e.g.*, *Calsoft Labs, Inc. v. Panchumarthi*, No. 19-CV-04398-NC, 2020

15  WL 512123, at *6 (N.D. Cal. Jan. 31, 2020) (intentional interference claims superseded by

16  CUTSA where complaint alleged that defendants "poach[ed] their employees and clients using the

17  information obtained through [defendant's] unauthorized access of plaintiff's email and Dropbox

18  accounts").

19         Vox's remaining allegations do not point to an independently wrongful act.  Vox argues

20  that an email Frazier sent Runnels at Avaya describing the migration of Consumer to a

21  subscription-based Avaya licensing agreement supports an "inference . . . that an independently

22  wrongful act occurred when Frazier, by getting Runnels a job at a different company, effectively

23  purchased Runnels's silence as to Defendants' ongoing, tortious, and concealed scheme."

24  Response at 20.  However, the Complaint does not allege that Defendants "purchased Runnels's

25  silence," and does not allow for such an inferential leap without factual allegations to support it.[3]

26  
27  _____

[3] Indeed, the Complaint indicates that Runnels was working at Avaya in October of 2021, and that Frazier was attempting to migrate Consumer to a subscription-based Avaya agreement, per Consumer Cellular's request.  Compl. ¶¶ 38(a), 40, 42, 44.

28  

United States District Court
Northern District of California

Vox also fails to explain what "constitutional, statutory, regulatory, [or] common law standard" proscribes the "concealed and offline dealings" and deletion of evidence. *See Eco Elec. Sys., LLC v. Reliaguard, Inc.*, No. C 20-00444 WHA, 2022 WL 1157481, at *9 (N.D. Cal. Apr. 19, 2022) ("wining and dining" of third party was improper, but not unlawful as required for tortious interference with a prospective economic advantage); *cf. Korea Supply*, 29 Cal. 4th at 1159 (finding sufficient allegations of independent wrongfulness where defendant allegedly engaged in bribery and offered sexual favors to obtain a contract).

Finally, Vox alleges that David Snyder, Vox's then Director of Sales, "cultivated connections" with clients "with McGreevey and Frazier's knowledge, awareness, aid, and/or encouragement," and that Snyder attempted to move a Vox client to Gage. Compl. ¶ 38(b). Vox does not provide any factual allegations as to Defendants "knowledge, awareness, aid and/or encouragement." Thus, the Court cannot find an independently wrongful act based on these conclusory assertions.[4]

As to Consumer Cellular, it is not clear whether there was an ongoing contractual relation with which to interfere. The Complaint states at one point that there was an "existing contract" between Consumer Cellular and Vox. Compl. ¶ 54. However, Vox also states that Defendants "encourage[ed] Consumer Cellular not to re-engage with Vox," Compl. ¶ 110, suggesting that Vox's claims focus on a potential future contract that Consumer Cellular had not yet reentered with Vox. To the extent the contract with Consumer Cellular was also at-will, Vox must allege "independent wrongfulness." *Ixcel Pharma*, 9 Cal. 5th at 1148. Vox argues that Defendants "misus[ed] Vox computers, servers, email accounts, expense accounts, and employee(s)' time." Response at 19. However, such alleged misuse does not constitute independently wrongful conduct.

The Court therefore **DISMISSES** the claims for tortious interference with a contract and

---

[4] Plaintiffs argue that the wrongful act was Snyder attempting to move a different Vox client to Gage. Response at 20 (citing Compl. ¶ 38(b)). However, Plaintiffs provide no factual allegations to support this conclusory assertion, do not explain how Defendants were responsible for Snyder's actions, and do not allege that Snyder was successful in transferring this client.

United States District Court
Northern District of California

tortious interference with a prospective economic advantage with leave to amend.

## IV.     CONCLUSION

For the foregoing reasons, the Court **DENIES** the motion to dismiss the breach of fiduciary duty claim as to McGreevey and the breach of loyalty claim.  The Court **GRANTS IN PART** and **DENIES IN PART** the motion to dismiss the UCL claim.  The Court **GRANTS** the motion to dismiss with leave to amend the trade secret misappropriation claim, the breach of fiduciary duty claim as to Frazier, aiding and abetting the breach of fiduciary duty, fraudulent concealment, conspiracy, tortious interference with a contract, and tortious interference with a prospective economic advantage.  Any amended complaint must be filed by **April 24, 2024**. No additional parties or claims may be added without leave of Court or stipulation of Defendants.


**IT IS SO ORDERED.**

Dated: March 25, 2024

ARACELI MARTÍNEZ-OLGUÍN
**United States District Judge**